ROBERT S. MCWHORTER (SBN: 226186)
JARRETT S. OSBORNE-REVIS (SBN: 289193)
BUCHALTER
A Professional Corporation
500 Capitol Mall, Suite 1900
Sacramento, CA 95814
Telephone: 916.945.5170
Email:   rmcwhorter@buchalter.com
        josbornerevis@buchalter.com

Attorneys for Secured Creditor,
SUNWEST BANK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EQUALTOX, LLC,<br><br>    Debtor. | Case No. 8:23-bk-12243-SC<br><br>Chapter: Chapter 11<br><br>**SUNWEST BANK'S OPPOSITION TO THE DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL**<br><br>Date:   December 13, 2023<br>Time:   10:00 a.m.<br>Judge:  Scott C. Clarkson<br>Ctrm.:   5C |

## I. INTRODUCTION

Sunwest Bank ("Bank") indisputably holds a first-priority lien on the rent generated from the Debtor's real property, constituting the Bank's cash collateral. Debtor Equaltox, LLC ("Debtor") seeks authorization to utilize this rent for its operating expenses during bankruptcy, which diminishes the collateral's value. While the Debtor offers a replacement lien on future rent to protect the Bank's interest, this offer is illusory since the Bank already possesses a prior lien on future rent. Further, the Debtor's use of rent to pay laboratory operation expenses does not primarily or directly benefit or protect the Bank's interest in the Debtor's real property or rental income. Consequently, this Court should deny the Debtor's Motion regarding using the Bank's cash collateral. Alternatively, in addition to protection proposed by the Debtor, this Court should

1

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

**SUNWEST BANK'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL: CASE NO. 8:23-BK-12243-SC**
BN 79732892v2

mandate that the Debtor make its agreed-upon monthly payments of $9,941.72 under its loan with the Bank to adequately protect the Bank against the loss of its collateral.

## II.     STATEMENT OF FACTS

Equaltox performs laboratory tests for medical diagnosis and treatment, toxicology, and COVID-19 tests. (Declaration of Sulaiman Masood ("Masood Decl."), ¶ 2 [ECF No. 12].)As a toxicology laboratory, Debtor provides tests related to the treatment of mental health disorders, alcoholism, and other substance abuse disorders. (*Id.*) Sulaiman Masood ("Masood") is the sole manager and owner of Debtor, which employs 20 persons. (*Id.* at ¶¶ 1, 2.)

The Debtor owns its office located at 550 N. Golden Circle Dr., Santa Ana, California 92705 ("Property"). (*Id.* at ¶¶ 4.). It acquired the Property in March 2023 with two loans from the Bank, one loan for $1,562,200 ("First Loan") and a second loan for $1,249,760 ("Second Loan"). (*Id.*)

The First Loan is evidenced by a promissory note dated March 14, 2023, in the original principal amount of $1,562,200 from the Debtor to the Bank. (Declaration of Cary Calkin ("Calkin Decl."), Ex. 1.) The First Loan was secured by a Deed of Trust ("Deed of Trust") and an Assignment of Leases and Rents ("Assignment"), each dated March 14, 2023, and recorded March 24, 2023, encumbering the Property. (Calkin Decl., Exs. 2, 3.) Under the Deed of Trust and the Assignment, the Debtor assigned and granted the Bank a continuing security interest in all rent, revenue, income, accounts receivable, cash, profits, and proceeds from the Property. (Calkin Decl., Ex. 2, p. 1, 5; Ex. 3, p. 1.)

In May 2023, the California Statewide Certified Development Corporation repaid the the repaid the Second Loan by making an SBA 504 loan. (Masood Decl., ¶ 4.)

On October 27, 2023 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (ECF No. 1.)

On November 3, 2023, this Court entered an order permitting the Debtor to use cash collateral on an interim basis. (ECF No. 39.)

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

2

**SUNWEST BANK'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL: CASE NO. 8:23-BK-12243-SC**
BN 79732892v2

## III. ARGUMENT

### A. Debtor Must Adequately Protect the Bank When Using Its Cash Collateral

Bankruptcy Code section 363 governs Debtor's use of cash collateral. It defines cash collateral as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest," including "the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest rents as provided in [11 U.S.C. §] 552(b)." 11 U.S.C. § 363(a). A debtor is prohibited from using a creditor's cash collateral in the ordinary course of business absent authorization by the court or consent from the entity with an interest in the collateral. 11 U.S.C. § 363(c)(2). Any authorized use of cash collateral be conditioned upon a debtor's provision of adequate protection to the entity with an interest in the collateral. 11 U.S.C. § 363(e).

Based on this standard, this Court may only authorize the Debtor to utilize cash collateral without the Bank's consent only when the Bank's interest is adequately protected. As the court noted in *Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436, 442 (B.A.P. 9th Cir. 2004), a "court shall condition the use of secured property 'as is necessary to provide adequate protection of such interest'" and "'when a creditor opposes a proposed use of cash collateral, the guiding inquiry is whether its security interests are 'adequately protected.'" The debtor bears the burden of proof on the issue of adequate protection under 11 U.S.C. § 363(p)(1). The "purpose of adequate protection is to protect lenders from diminution in the value of their collateral." *Qmect, Inc. v. Burlingame Capital Partners II, L.P.*, 373 B.R. 682, 690 (N.D. Cal. 2007). Adequate protection may be provided by (1) making periodic cash payments or equivalent to the decrease in the value of the creditor's interest; (2) an additional or replacement lien on other property; or (3) other relief that provides the "indubitable equivalent" of the creditor's interest in the property. 11 U.S.C. § 361; *Mut. Life Ins. Co. v. Patrician St. Joseph Partners, Ltd. P'ship (In re Patrician St. Joseph Partners Ltd. P'ship)*, 169 B.R. 669, 677 (D.

3

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

SUNWEST BANK'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR
ORDER AUTHORIZING USE OF CASH COLLATERAL: CASE NO. 8:23-BK-12243-SC

BN 79732892v2

Ariz. 1994). The Debtor has not provided adequate protection to the Bank.

### B. A Replacement Lien and Use of Funds to Maintain Operations Do Not Adequately Protect The Bank

In the Motion, the Debtor acknowledges collecting $12,544.20 monthly rent from its tenant, Sagebrush, LLC. (Masood Decl., ¶ 5.) In a woeful attempt to comply with Section 363, the Debtor offers two methods to ostensibly protect the Bank's interest in this rent. It offers a replacement lien in its post-petition cash to the Bank to the same extent, validity, and priority as of the Petition Date. (Memo., p. 5:4-9.) It also claims that the Bank is protected because the use of the rent "will enable the Debtor to continue to operate its business." (Memo., p. 15:24-25.) These purported methods are inadequate and hollow.

First, a replacement lien on rent generated post-petition does not protect the bank's interest in the Debtor's cash collateral (i.e., rent). A replacement lien on future rents, a property over which the Bank already has a security interest, cannot be considered adequate protection. (*In re Rosario*, No. 23-02291 MAG11, 2023 Bankr. LEXIS 2742, at *15 (Bankr. D.P.R. Nov. 9, 2023) ("Debtor cannot give [secured creditor] a replacement lien in future rents because [the secured creditor's] security interest already extends to those rents"); *In re Buttermilk Towne Ctr., LLC*, 442 B.R. 558, 566-567 (B.A.P. 6th Cir. 2010) (a replacement lien on post-petition rental income a replacement lien in future rents offers no adequate protection because the lender's lien already covers those rents; a lender is entitled to receive adequate protection for Debtor's use of the net rents generated post-petition). In *In re Smithville Crossing, LLC*, No. 11-02573-8-JRL, 2011 Bankr. LEXIS 4605, at *29 (Bankr. E.D.N.C. Sep. 28, 2011), the court recognized that a prepetition security interest in rents is a special kind of collateral that a mere replacement lien does not protect the interest the creditor has in accruing rents. The court concluded that "the proffer of a replacement lien on post-petition rents is illusory by virtue of [section] 552(b) of the Bankruptcy Code," which already grants a lien on post-petition rent. *Id.* at *31. Under Section 552(b), if a creditor had a security interest in real property and its rents before the bankruptcy filing, the "security interest extends to such rents . . . acquired by the estate after the commencement of the case to the extent provided by such security agreement." 11 U.S.C. §

4

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

SUNWEST BANK'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR
ORDER AUTHORIZING USE OF CASH COLLATERAL: CASE NO. 8:23-BK-12243-SC
BN 79732892v2

552(b)(2).

Most courts consider a security interest in rent wholly separate from a creditor's security interest in the real property, therefore requiring separate adequate protection for rent assigned to a lender as collateral. (In re *Chatham Parkway Self Storage, LLC*, No. 12-42153, 2013 Bankr. LEXIS 1955, at *12-13 (Bankr. S.D. Ga. Apr. 25, 2013). In *In re Griswold Bldg., LLC*, 420 B.R. 666, 699 (Bankr. E.D. Mich. 2009), the court explained:

> A creditor that holds both a mortgage on real property and a security interest in rents "has two distinct security interests[.]". . . "Where [ ] there is a specific assignment of rents given as security, a diversion of any portion of the rents to a party other than the secured party is clearly a diminution of the secured party's interests in the assignment of rents portion of the security.". . . To protect against that diminution in value, a debtor must provide adequate protection for the interest in rents above and beyond any adequate protection for the interest in the real property. . . . "Each of these interests must be adequately protected.". . .

Other courts have affirmed that a security interest in the rents is separate from a security interest in the real property, and therefore, it is entitled to separate adequate protection for the use of the rents.[1] *In re Putnal*, 483 B.R. 799, 805 (Bankr. M.D. Ga. 2012), the court held that "a security interest in post-petition rents that is separate from its interest in the real property" and, as such, "any use of the rents results in a dollar-for-dollar reduction in the value of that collateral" that must be separately protected. In *Rosario*, 2023 Bankr. LEXIS 2742, at *14-*15, the court found that the cash collateral from rent paid by tenants is separate and distinct from real estate collateral and, as such, a diversion of any portion of the rents to a party other than the secured party is clearly a diminution of the secured party's interest in the assignment of rents portion of the security that must be protected "by cash payments from another source, an additional or replacement lien, or other such indubitable equivalent."

The fact that Defendant will use the Bank's cash collateral to pay operating expenses for its laboratory business does not adequately protect the Bank. In *In re Putnal*, 483 B.R. at 804, rent may only utilized without offering adequate protection when it is employed to protect the secured

---

[1] See also *In re: Stearns Bldg.*, No. 98-1257, 1998 U.S. App. LEXIS 22121, at *12 (6th Cir. Sep. 3, 1998); *In re Builders Group & Dev. Corp.*, 502 B.R. 95, 122 (Bankr. D.P.R. 2013); *In re Union-Go Dairy Leasing, LLC*, No. 10-01703-AJM-11, 2010 Bankr. LEXIS 1468, at *11 (Bankr. S.D. Ind. May 6, 2010).

5
SUNWEST BANK'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL: CASE NO. 8:23-BK-12243-SC

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

BN 79732892v2

lender's interest in the property. That is not the case here. Under the Deed of Trust and the Assignment, the Bank's security interest lies with the Property and its rental income. Using the funds to pay business expenses (such as employees and cost of goods) does not directly or primarily benefit the Property or protect the Bank's interest in rent. Thus, the Debtor's use of the Bank's rent to pay expenses offers no protection to the Bank.

### C. The Debtor Should Be Required to Make Periodic Cash Payments to the Bank

The Debtor's use of the rent from the Property results in a dollar-for-dollar reduction in the value of that collateral. To mitigate against that loss, the Debtor must make periodic cash payments equal to the decrease in the value of the Bank's interest in cash collateral. The Bank's cash collateral consists of $12,544.20 in monthly rent paid by Sagebrush LLC to the Debtor under a lease dated December 19, 2022. (Masood Decl., ¶ 5.) Under the Note, the Debtor must pay $9,941.72 per month on the first day of each month. (Calkin Decl., Ex. 1.) At a minimum, the Debtor should be required to pay this amount, starting November 1, 2023, to protect its interest in the cash collateral and to prevent deterioration of its lien position in the Property during this bankruptcy proceeding. Payment of this amount is warranted. It compensates the Bank by providing a portion of its collateral.

Moreover, it further protects the Bank from deterioration of its loan, which its cash collateral secures. During this bankruptcy proceeding, the First Loan will continue to accrue interest per Bankruptcy Code section 506.[2] Under the First Note, the Debtor agreed to make monthly payments of $9,941.72 to the Bank. (Calkin Decl., ¶¶ 5, 6.) With interest rates over six percent, most of this payment would be applied to interest accruing on the First Loan.[3]

The Debtor and its bankruptcy estate benefit from the proposed periodic payments to the Bank. First, it avoids having interest continuing to accrue on the First Loan. Second, it allows the

---

[2] The Debtor admits that the Bank possesses a first priority Deed of Trust for at least $1,562,000 in debt secured by the Property, which the Debtor estimates to be worth $3,075,000 encumbered by $2,811,960 in liens. (Memo., p. 6:6-7; ECF No. 65, pp. 13-14.)

[3] The First Note accrues variable non-default interest at the rate of five year treasury constant maturity rate (which currently totals 4.29%) plus two percentage points. (Calkin Decl., Ex. 1.) For example, if one assumes an interest rate of 6.29% on an outstanding principal of $1,562,000, the interest per month would total $8,187.48.

6

BUCHALTER
A PROFESSIONAL CORPORATION
SACRAMENTO

SUNWEST BANK'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL: CASE NO. 8:23-BK-12243-SC

BN 79732892v2

Debtor to retain $2,602.48 from the monthly rent collected ($12,544.20-$9,941.72) to operate its business while protecting the Bank from the lost use of its cash collateral (i.e., rent) and deterioration of its secured debt through the accrual of interest during this bankruptcy proceeding. Third, the Debtor can make monthly payments to the Bank to avoid the deterioration of its secured debt through the accrual of interest during this bankruptcy proceeding. As of November 4, 2023, Debtor has $367,948.69 in cash on hand and projects a $146,357.31 increase in cash reserves to $514,306 by January 27, 2024, underscoring Debtor's wherewithal to fulfill its financial obligations without undue hardship.

## IV.  CONCLUSION

For the reasons set forth above, this Court should deny the Motion regarding the Debtor's use of the Bank's cash collateral or grant the Motion requiring the Debtor to pay $9,941.72 per month on the first of each month, starting November 1, 2023, in addition to an acknowledgment of the Bank's replacement lien on future rents.

DATED: November 29, 2023            BUCHALTER, A Professional Corporation

By: _____
ROBERT S. MCWHORTER
Attorneys for Secured Creditor,
Sunwest Bank

7

SUNWEST BANK'S OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL: CASE NO. 8:23-BK-12243-SC

BN 79732892v2