Jessica M. Simon (Cal. Bar No. 277581)
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400
Facsimile: 424.204.4350
E-mail: simonjm@ballardspahr.com

Attorneys for First-Citizens Bank & Trust
Company, successor by merger to CIT Bank,
N.A.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>EQUALTOX, LLC, a California limited liability company,[1]<br><br>Debtor. | Case No. 8:23-bk-12243-SC<br><br>Chapter 11<br><br>**FIRST-CITIZENS BANK & TRUST COMPANY'S LIMITED OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL, AND SUPPLEMENTAL BRIEF IN SUPPORT; DECLARATION OF GEORGE JANES IN SUPPORT**<br><br>Date:     December 13, 2023<br>Time:    10:00 a.m.<br>Place:    Courtroom 5C<br>             Ronald Reagan Federal Building<br>             411 West Fourth Street<br>             Santa Ana, CA 92701<br>Judge:   Scott C. Clarkson |

Senior secured creditor First-Citizens Bank & Trust Company, successor by merger to CIT Bank, N.A. ("FCB"), on the property located at 8100 Electric Avenue, Stanton, CA 90680 (the "Electric Ave. Property") hereby files this limited objection to Equaltox's Emergency Motion for

---

[1] On November 16, 2023, this Court entered an order to show cause why the bankruptcy cases of Equaltox, LLC ("Equaltox"), Sulaiman Masood ("Masood"), Case No. 8:23-bk-12198-SC, and Ahmad Ali Kohzad, Case No. 8:23-bk-12249-SC should not be jointly administered. That matter is set for hearing on December 13, 2023. This objection pertains to the estates of Equaltox and Masood.

Order Authorizing Use of Cash Collateral, filed on October 30, 2023 (the "CC Motion," Dkt. 9), of which FCB did not receive notice, and Equaltox's Supplemental Brief in Support of Emergency Motion for Order Authorizing Use of Cash Collateral ("Supplemental Brief," at 5:15-17, Dkt. 68), for the reasons set forth herein.

## I.    INTRODUCTION

FCB is the uncontested first lienholder on the Electric Ave. Property, secured by the property and leases, rents, and proceeds thereof. FCB never received notice of the CC Motion, even though Equaltox claims to hold a beneficial ownership interest in the Electric Ave. Property and collects rents of $20,000.00 per month from the tenant there (FCB's cash collateral). Only Masood is on title to the Electric Ave. Property. FCB has received no payments on its secured loan since at least August 2023. That is despite the fact that Equaltox appears to have been paying other secured creditors in this bankruptcy, including a junior lienholder on the Electric Ave. Property for the weeks ending November 4 and 25, 2023.

To be clear, FCB has not consented to use of its cash collateral. FCB does not necessarily object to its use, but it does object to the inadequate protection that Equaltox offers (e.g., three interest-only payments of $2,160 per month from December 2023 – February 2024, plus purported replacement liens). FCB further objects to the unequal treatment that it has received in relation to other secured creditors who have received payments in this bankruptcy.[2] As adequate protection of its interests, and considering that Equaltox is collecting $20,000.00 per month in rents on the Electric Ave. Property, FCB requests payment of both past-due amounts of $8,799.60 and principal and interest payments of $2,838.58 going forward, in addition to any replacement liens. Short of that, given the speculative nature of future cash flow projections and risks and costs associated with the Anthem litigation, FCB is not adequately protected.

## II.    BRIEF FACTUAL BACKGROUND

1.    On or about October 21, 2019, FCB, as successor by merger to CIT Bank, N.A.,

---

[2] It also is notable that, on December 6, 2023, FCB received Notice of Setting/Increasing Insider Compensation, which payments to insiders may be coming from secured creditors, including FCB's cash collateral, despite the lack of payments to FCB.

2

loaned Masood the principal amount of $506,000.00 (the "Loan"), pursuant to terms of a Promissory Note (the "Note"), a Business Loan Agreement ("BLA"), and related loan documents (collectively the "Loan Documents"). (*See* Declaration of George Janes ("Janes Decl."), ¶ 6, Exs. 1-2.) Equaltox and a non-debtor third party, L.A. Good Samaritan Pathology Medical Group, both executed Commercial Guarantees (the "Guarantees") in support of the Loan.[3] (*See* Janes Decl., ¶ 6, Exs. 3-4.) Pursuant to terms of the Guarantees, the Guarantors guaranteed the absolute and unconditional payment and performance of all obligations and indebtedness under the Loan. (*See* Exs. 3-4.)

2.    The Loan is secured by a first priority Deed of Trust ("DOT"), with title held in the name of Masood, and Assignment of Leases and Rents ("AOR") on the Electric Ave. Property, recorded in the Official Records of Orange County, as Instrument Nos. 2019000426863 (DOT) and 2019000426864 (AOR). (*See* Janes Decl., ¶ 7, Exs. 5-6.) The AOR is an absolute assignment of Leases and Rents made in connection with the Loan to secure payment of indebtedness and performance of any and all obligations of the grantor (Masood) under the Loan Documents. (*See* Ex. 6.)

3.    In addition, Masood, as borrower and lessor, and Equaltox, as tenant, executed a Subordination of Lease Agreement in favor of FCB that was duly recorded in the Official Records of Orange County, as Instrument No. 2019000426865. (*See* Janes Decl., ¶ 8, Ex. 7.) Masood, as lessor and assignor, and Equaltox, as lessee, also executed a Collateral Assignment of Lease (Lessor's Interest) ("Lease Assignment") in favor of FCB, as assignee, pursuant to which Masood irrevocably granted, transferred, and assigned to FCB all rights, title and interest of Masood in and to the Electric Ave. Premises for the purpose of, among other things, securing the payment and performance of the Loan. The Lease Assignment was duly recorded in the Official Records of Orange County, as Instrument No. 2019000426866. (*See* Janes Decl., ¶ 8, Ex. 8.) Following the filing of Equaltox's bankruptcy case, FCB learned from Equaltox's counsel of another lease or sublease on the Electric Ave. Property with West Coast Alliance. (*See* Janes Decl., ¶ 8.) FCB did not consent to this lease or sublease. (*See* Janes Decl., ¶ 8.) Pursuant to terms of that lease or

---

[3] Equaltox inaccurately contends that it guaranteed a second Small Business Loan ("SBA") loan only, but it guaranteed FCB's loan as well. (*See* Supplemental Brief, 5:21.)

3

sublease, West Coast Alliance is paying $20,000.00 per month in rent. (*See* Janes Decl., ¶ 8; Supplemental Brief, 5:22.)

4. Masood defaulted on payments under terms of the Loan Documents, and FCB has not received any payments on its Loan since at least August 2023. As of December 1, 2023, past due amounts under the Loan are $8,799.60, plus further accruing interest, fees, and costs (including attorneys' fees and costs). The principal balance owed is at least $473,727.58, with monthly principal and interest payments of at least $2,838.58. (*See* Janes Decl., ¶ 9.)

5. On October 24, 2023, Masood filed its petition for relief under Chapter 11, Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). On October 27, 2023, Equaltox filed its petition for relief under Chapter 11, Title 11 of the Bankruptcy Code.

6. On or about October 30, 2023, Equaltox filed the CC Motion, which the Court granted on an interim basis on November 1, 2023 (Dkt. 30).

7. FCB indisputably did not receive notice of the CC Motion. (*See* Janes Decl., ¶ 11.) Equaltox admits that it only determined that it holds a beneficial ownership interest in the Electric Ave. Property "[a]fter the filing of the Motion and the hearing thereon[.]" (*See* Supplemental Brief, 5:15-17.) FCB has not consented to use of its cash collateral. (*See* Janes Decl., ¶ 11.)

8. On November 29, 2023, Equaltox filed the Supplemental Brief (Dkt. 68).

9. In the Supplemental Brief, Equaltox claims to hold a "beneficial ownership interest" in the Electric Ave. Property, having "paid all or a majority of the down payment for the Electric Avenue Property." It further claims that "Masood asserts only a nominal ownership interest in the Electric Avenue Property." (*See* Supplemental Brief, 5:16-17, 23-34.) Moreover, Equaltox asserts that it "has made the debt service payments associated with the Electric Avenue Property and has received the rental income from such property." (*See id.*, 5:25-26.)

10. According to Equaltox's Budget, attached as Exhibit 1 to the Supplemental Brief, it budgets interest only payments to FCB of $2,160.00 for the weeks ending December 2, 2023, January 6, 2024, and February 10, 2024. (*See* Ex. 1 to Supplemental Brief.) Other creditors (except FCB) appear to have been receiving budgeted payments since at least November 2023, including the junior lienholder on the Electric Ave. Property, California State Wide Certified Development

4

1 Corporation as assigned to the SBA, with budgeted payments as of November 4 and 25, 2023. (*See*
2 *id.*)

3    11.    Although Equaltox admits that it historically has collected rental payments on the
4 Electric Ave. Property, which are $20,000.00 per month, and serviced Masood's debt to FCB, FCB
5 has not received any payments since at least August 2023. (Supplemental Brief, 5:22; *See* Janes
6 Decl., ¶ 9.)

## III.    LIMITED OBJECTION

### A. FCB Did Not Consent to Use of Its Cash Collateral, Or Receive Notice of the CC Motion; Thus, All Rents To Date Should be Segregated, Accounted For, and Used to Pay Past Due Amounts Under the Loan.

Section 363 of the Bankruptcy Code defines "cash collateral" to include all cash, rents and proceeds of collateral. 11 U.S.C. § 363(a). The Bankruptcy Code is clear that a debtor-in-possession "may not use, sell, or lease cash collateral under [Section 363(b)(1)] unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of [Section 363]." 11 U.S.C. § 363(c)(2); *Scottsdale Med. Pavilion v. Mut. Benefit Life Ins. Co. In Rhab. (In re Scottsdale Med. Pavilion)*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993) ("That subsection requires either consent by the creditor to the use of its cash collateral, or a court order authorizing its use."); *see also Premier Interval Resorts, Inc. v. Revanche LLC (In re Premier Interval Resorts, Inc.)*, No. 02-1772, 2003 WL 145069, at *6 (N.D. Tex. Jan. 15, 2003) ("[T]he plain language of sections 363(c)(2) and (4) requires the debtor-in-possession to actively comply with the Code's requirements. In particular, section 363 requires the debtor to 'segregate and account for' the cash collateral as well as to obtain 'consent' from the creditor or the 'authorization' of the bankruptcy court. The language of these subsections clearly places the burden of compliance upon the debtor-in-possession") (citations omitted). Moreover, the Bankruptcy Code directs that a debtor-in-possession "shall segregate and account for any cash collateral in the [debtor's] possession, custody, or control." 11 U.S.C. § 363(c)(4).

5

FCB has not consented to use of its cash collateral, and it is unclear whether and to what extent Equaltox has segregated and accounted for FCB's cash collateral. Equaltox did not provide FCB with notice of the CC Motion, and thus Equaltox did not, and does not, have authority to use FCB's cash collateral. The rents from the Electric Ave. Property should have gone to pay the Loan, and FCB requests that the Court order that those rents be segregated, accounted for and used to pay past due amounts to FCB from August through November 2023.[4] Any further continued use of FCB's cash collateral requires Court authorization at the final hearing.

**B. Equaltox Has Failed to Demonstrate That FCB's Interest Is Adequately Protected.**

FCB has demonstrated its uncontested interest in the cash collateral and, thus, it has met its initial burden of demonstrating the validity, priority or extent of its interest. 11 U.S.C. § 363(p)(2). Once this burden is met, the Debtor bears the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p)(1). 11 U.S.C. § 363(p)(1) ("the [debtor in possession] has the burden of proof on the issue of adequate protection"); *In re Swedeland Dev. Group*, 16 F.3d 552, 564 (3d Cir. 1994); *see generally* 3 COLLIER ON BANKRUPTCY ¶ 363.06 (3d ed. rev. 2005). Indeed, "[t]he debtor's standard in cash collateral cases is a high one." *First Bank of Miller v. Wieseler*, 45 B.R. 871, 876 (D. S.D. 1985). The debtor, and not the court, must frame the adequate protection package. *In re Blehm Land and Cattle Co.*, 859 F.2d 137 (10th Cir. 1988); *see also* H.R. Rep. No. 595, 95th Cong., 1st Sess. 339 (1977) ("the debtor in possession will provide or propose a protection method").

Section 361 of the Bankruptcy Code provides an illustrative list of what may qualify as adequate protection. That section recognizes that, to the extent that use of cash collateral "results in a decrease in the value of such entity's interest in such property," adequate protection may consist of cash payments or replacement liens. 11 U.S.C. § 361(1)–(2). The estate also may provide other forms of adequate protection so long as they "will result in the realization by [the secured party] of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3).

---

[4] Segregation and accounting of FCB's cash collateral also should be ordered to account for payments made to insiders based on the Notice of Setting/Increasing Insider Compensation that FCB received on December 6, 2023.

The general purpose of adequate protection is to ensure that the secured creditor ultimately receives what it would have received absent a bankruptcy. Put differently, protection is deemed "adequate" if the secured creditor's interests are preserved at "status quo" or are protected from dissipation by cash payments, replacement liens or the like. *In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1987). Adequate protection "should [therefore] as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights." *In re Swedeland,* 16 F.3d at 564 (citing *In re Martin,* 761 F.2d 472, 476 (8th Cir. 1985)); *In re American Mariner Industries, Inc.,* 734 F.2d 426, 435 (9th Cir. 1984).

Adequate protection of a secured lender's interest in cash collateral is mandatory and a condition precedent to using cash collateral. *See* 11 U.S.C. § 363(e) ("[A]t any time . . . the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."); *In re Scottsdale Med. Pavilion,* 159 B.R. at 302 ("[I]n all cases the debtor must provide adequate protection of the creditor's interest as a condition of using cash collateral."); *Reisner v. Dayton Country Club Co. (In re Magness)*, 972 F.2d 689 (6th Cir. 1992); *In re Heatron*, 6 B.R. 493, 495 (Bankr. W.D. Mo. 1980); 3 COLLIER ON BANKRUPTCY ¶ 363.05 (3d ed. rev. 2005) ("[I]f a trustee seeks to use cash collateral and cannot obtain the consent of the entity with an interest in the collateral, adequate protection must be furnished before the cash collateral can be used.").

When a debtor desires to use cash collateral, the court must determine the value of the creditor's interest in it, impairment of that interest, and the extent to which adequate protection is provided. *See McCombs Props. VI, Ltd. v. First Tex. Sav. Assoc. (In re McCombs Props. VI, Ltd.)*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) ("In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for the use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence."); *Martin v. United States ex rel. Commodity Credit Corp. (In re Martin)*, 761 F.2d 472, 477 (8th Cir. 1985).

The standard is high because cash, once spent, is permanently removed from a secured lender's collateral base. Cash is the highest, best and most secure form of collateral. *See, e.g., In re Berens*, 41 B.R. 524, 527 (Bankr. D. Minn. 1984) ("if the Debtor is allowed to use the cash collateral, the creditors' security–the collateral– is gone. No longer does the secured party have the asset it originally bargained for as collateral available to it."); 3 COLLIER ON BANKRUPTCY ¶ 363.06 (3d ed. rev. 2005) ("where . . . receivables are being collected, and the proceeds spent, . . . adequate protection must be furnished to the entity requesting relief").

As adequate protection, Equaltox offers replacement liens in its post-petition revenues. (Supplemental Brief, 4:12, 6:17-18.) But Equaltox acknowledges that its future revenue is projected only. Even if its cash flow is presently increasing, as it contends, any future increase or stabilized cash flow sufficient to protect secured creditors is speculative. This is particularly true in light of the Anthem litigation, which involves both risk and litigation costs. When proposing an adequate protection package, a debtor must provide more than mere speculation regarding the protection being offered, as a finding of adequate protection must be premised on facts grounded on a firm evidentiary basis. *In re Mosello*, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996) (finding insufficient evidence of adequate protection based on debtor's projection of future transactions); *Wieseler*, 45 B.R. at 876 (rejecting debtors' proffer of a replacement lien in future crops, finding that the debtors "must go beyond simply estimating what they hope they can harvest and what they hope the market will bring for it"). Moreover, the value of any replacement liens is illusory, as FCB's existing security interest already extends post-petition to cover all of the proceeds generated by FCB's pre-petition collateral under section 552(b) of the Bankruptcy Code. *See, e.g., In re Buttermilk Town Center, LLC*, 442 B.R. 558 (B.A.P. 6th Cir. 2010) (holding that replacement lien on future rents where lender already has valid security interest on pre-petition and post-petition rents does not provide adequate protection for the debtor's use of rents to pay chapter 11 administrative expenses and professional fees and costs).

Furthermore, general assertions that FCB (and other secured creditors) will benefit from continued operations are irrelevant to the analysis required for adequate protection. (*See* Supplemental Brief, p. 7.) A mere need to use cash collateral for continued operations is not a basis

8

for allowing a debtor's use of cash collateral. *In re McCutchen*, 115 B.R. 126, 133 (Bankr. W.D. Tenn. 1990) (denying use of cash collateral, holding that "mere need does not satisfy the requirements of sections 361 and 363"); *see also In re Goode,* 235 B.R. 584, 590 (Bankr. E.D.Tenn. 1999) ("While the Court understands the ramifications of failing to get [cash collateral] authorization can be devastating to a debtor's case, that fact alone simply cannot suffice as the sole means by which to justify the use of a creditor's cash collateral. . . ."). Thus, Equaltox has failed in its burden of proving that FCB's interests are adequately protected, and the purported protections that it offers are illusory and speculative only.

### C. To Protect FCB's Interest Adequately, Equaltox Should Pay FCB All Past Due Amounts, Plus Principal and Interest Payments Going Forward.

As set forth above, given that FCB did not receive notice of the CC Motion, Equaltox was not authorized to use its cash collateral, and all rents collected to date and going forward should be segregated, accounted for, and used to pay past due amounts. Moreover, as adequate protection, and given the collection of $20,000.00 per month in rents on the Electric Ave. Property, Equaltox should pay all past-due amounts to FCB, which are $8,799.60 as of December 1, 2023. Moreover, Equaltox should make principal and interest payments of $2,838.58 going forward to ensure adequate protection of FCB's interests, given the speculative nature of Equaltox's future cash flow, risks and costs associated with the Anthem litigation that could undercut FCB's cash flow, and the amount of rent collected per month at the Electric Ave. Property.

### IV. CONCLUSION

For all of the reasons set forth herein, and any arguments made at the final hearing, FCB respectfully requests that the Court only grant the CC Motion on the adequate protection terms set forth herein for payment of all past due amounts to FCB of at least $8,799.60 and principal and interest payments of $2,838.58 going forward, in addition to any replacement liens.

| | | |
|---|---|---|
| 1 | Dated: December 7, 2023 | **BALLARD SPAHR LLP** |
| 2 | | |
| 3 | | /s/ Jessica M. Simon |
| | | Jessica M. Simon (Cal. Bar No. 277581) |
| | | 2029 Century Park East, Suite 1400 |
| 4 | | Los Angeles, CA 90067-2915 |
| | | Telephone: 424.204.4400 |
| 5 | | Facsimile: 424.204.4350 |
| | | E-mail: simonjm@ballardspahr.com |

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

10

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2029 Century Park East, Suite 1400, Los Angeles, CA 90067-2915.

A true and correct copy of the foregoing document entitled (*specify*): **FIRST-CITIZENS BANK & TRUST COMPANY'S LIMITED OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL, AND SUPPLEMENTAL BRIEF IN SUPPORT; DECLARATION OF GEORGE JANES IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 7, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

William H Brownstein on behalf of Attorney William Harold Brownstein
Brownsteinlaw.bill@gmail.com

Timothy W Evanston on behalf of Debtor EQUALTOX, LLC
tevanston@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Lauren N Gans on behalf of Interested Party Courtesy NEF
lgans@elkinskalt.com, cavila@elkinskalt.com,lwageman@elkinskalt.com

Michael I. Gottfried on behalf of Interested Party Courtesy NEF
mgottfried@elkinskalt.com, cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com

Michael J Hauser on behalf of U.S. Trustee United States Trustee (SA)
michael.hauser@usdoj.gov

Robert S Marticello on behalf of Debtor EQUALTOX, LLC
Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com

Robert S McWhorter on behalf of Creditor Sunwest Bank
rmcwhorter@buchalter.com, ewaldrop@buchalter.com;dpowers@buchalter.com

Jessica Mickelsen Simon on behalf of Creditor First-Citizens Bank & Trust Company, successor by merger to CIT Bank, N.A.
simonjm@ballardspahr.com, carolod@ballardspahr.com

Jarrett S Osborne-Revis on behalf of Creditor Sunwest Bank
josbornerevis@buchalter.com, ewaldrop@buchalter.com;dpowers@buchalter.com

Christopher O Rivas on behalf of Creditor Blue Cross of California dba Antham Blue Cross; Anthem Blue Cross Life and Health Insurance Company
crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com

Christopher O Rivas on behalf of Interested Party Courtesy NEF
crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com

Michael Simon on behalf of Debtor EQUALTOX, LLC
msimon@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                              **F 9013-3.1.PROOF.SERVICE**

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Roye Zur on behalf of Interested Party Courtesy NEF
rzur@elkinskalt.com,

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On December 7, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 7, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 7, 2023 | Eric Garcia | /s/ Eric Garcia |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**